IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30703
_____


In Re: In the Matter of the Complaint
of TRANSPORTER MARINE, INC., as Owner of
M/V Transporter, and GULF TRAN INC., as
Operator of the M/V Transporter, for
Exoneration from or Limitation of Liability.

TRANSPORTER MARINE, INC., as owner of M/V
Transporter; GULF TRAN INC., As Operator of
M/V Transporter,

                                        Petitioners-Appellants,

versus

NEWFIELD EXPLORATION COMPANY; ET AL.,

                                                  Claimants,

NEWFIELD EXPLORATION COMPANY; ST. PAUL
SURPLUS LINES INSURANCE COMPANY,

                                        Claimants-Appellees,

and

UNITED STATES OF AMERICA, on behalf of the
United States Coast Guard,

                                                  Appellee.

NEWFIELD EXPLORATION COMPANY; ST. PAUL
SURPLUS LINES INSURANCE COMPANY,

                                        Plaintiffs-Appellees,

versus

EROICA HALL also known as RICO HALL,

                                                  Defendant,

versus

TRANSPORTER MARINE, INC.; GULF TRAN INC.;

                                        Defendants-Appellants.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana

--------------------
July 13, 2000

Before WIENER, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:

This appeal involves narrow legal issues of first impression arising from a collateral skirmish in the same district court that is conducting a marine limitation of liability proceeding. That proceeding was provoked by Petitioners, the owners and operators of the M/V Transporter, after Claimant-Appellee Eroica R. Hall, a seaman on the M/V Transporter, lost both legs in a shipboard accident.[1] Some time after the incident, the Coast Guard instituted administrative proceedings against Petitioners for allegedly failing properly to comply with the Coast Guard's regulations that require marine employers to test for drugs and alcohol all those on board a vessel who are directly involved in a serious marine incident.[2] The Coast Guard's authority to require such testing is derived from a federal statute.[3]

Petitioners, whose rights to invoke court protection in exoneration or limitation of liability emanate from the Limitation of Liability Act of 1851 ("the Limitation Act"),[4] obtained an order from the district court directing all persons with claims for any losses, damages, injuries, or destruction resulting from or incidental to Hall's accident to file claims in those proceedings, and restrained the commencement or continued prosecution of any

---

[1] Hall has settled, and this appeal has been dismissed as to his interests in it.

[2] See 46 C.F.R. § 4.06-1.

[3] See 46 U.S.C. § 2115.

[4] 46 U.S.C. §§ 181-89.

2

action or proceeding against Petitioners. They contended that the district court's orders require the Coast Guard to assert its claims for fines and penalties under its drug and alcohol testing regulations in the exoneration and limitation action. The Coast Guard countered by insisting that its drug testing regulations and all proceedings thereunder are subject to the Administrative Procedures Act ("APA"), do not arise from and are not in connection with the maritime action underlying the Limitation Act proceedings in the district court, are temporally remote from Hall's accident, and are regulatory in nature and thus not subject to the otherwise broad sweep of the Limitation Act.

The district court agreed with the Coast Guard and denied the requests of Petitioners on two separate grounds: (1) The regulatory proceedings of the Coast Guard are not subject to limitations under the Act, and (2) those regulatory proceedings arose from a failure to act (inadequate compliance with the drug testing requirements) that occurred after Hall's accident and, as such, were not "done, occasioned, or incurred" as part and parcel of the accident. Dissatisfied with the rulings of the district court, Petitioners instituted this appeal.

                                    I.

Petitioners proffer at least four issues on appeal:

1.   Whether federal sovereign immunity exempts the Coast Guard administrative hearing from proceedings conducted in the district court under the Limitation Act;

3

2. Whether, as a matter of statutory interpretation or otherwise, the Coast Guard administrative proceedings are exempt from the Limitation Act;

3. Whether, as a matter of statutory interpretation, the facts of this case demand that these particular Coast Guard administrative proceedings come within the statutory ambit of the Limitation Act, assuming it is found applicable in the first place; and

4. Whether, and to what extent, a determination that Gulf Tran had "privity and knowledge" of the violations that give rise to the Coast Guard administrative proceedings, might be relevant, thereby removing such proceedings from the protections afforded by the Limitation Act.

As we shall proceed to analyze issues 2 and 3 and to dispose of this appeal in alternative rulings on those two issues, we need not and therefore do not address issues 1 and 4.

A. <u>Exemption of Coast Guard Administrative Proceedings from the Limitation Act</u>

The Coast Guard requires marine employers to test for drug and alcohol abuse all persons on board a vessel who are directly involved in a serious marine incident.[5] Petitioners do not contest the authority of the Coast Guard to require such testing and to require submission of the results of such testing to the Coast Guard. Petitioners focus instead on the determination of the proper forum in which these administrative requirements can and

_____

[5] See 46 C.F.R. § 4.06-1.

4

should be enforced: (1) a Limitation Act proceeding in district court, or (2) an administrative hearing in accordance with Coast Guard procedures under the aegis of the Administrative Procedures Act. Petitioners insist that the broad language of the Limitation Act and the protection it affords apply to enjoin all other proceedings in any other forum. They argue that this is the only way to protect an owner who is personally free from blame from damages that arise out of a marine incident. In diametric opposition, the Coast Guard insists that its proceedings are exempt from the Limitation Act.

There is a dearth of jurisprudence on this point. We find some guidance in the opinion of this court in University of Texas Medical Branch at Galveston v. United States.[6] In that case, the United States spent some three million dollars to remove a wrecked vessel from the sea bottom. The vessel owner filed a limitation action and the United States sought exclusion. We determined that the Wreck Act, part of the Rivers and Harbors Act of 1899,[7] which governs allocation of costs incurred in removing a wrecked vessel, creates a statutory duty to remove the vessel. This in turn results in the owner's bearing the cost of removal, regardless of limitation. Reasoning that the government should not be penalized for promptly removing the wreck, we allowed the government to

---

[6] 557 F.2d 438 (5th Cir. 1977).

[7] 33 U.S.C. § 401 et seq. (Originally enacted as Act of Mar. 3, 1899, Ch. 425, 30 Stat. 115 et seq.). Sections 13, 16, 19, and 20 of the Wreck Act are codified at 33 U.S.C. §§ 409, 411, 412, 414 and 415, respectively.

recover its costs unfettered by the constraints of a limitation proceeding.

We find the implications of that case instructive. Congress has granted authority to the Coast Guard to enforce mandated drug and alcohol regulations. Even though the government filed a civil suit under the Wreck Act in University of Texas Medical Branch and, in contrast, instituted administrative proceedings for fines and penalties in the instant case, both claims arose from statutory authority creating an independent statutory duty on the part of the shipowner. To subject either claim to limitation would thwart the expressed intent of Congress — removal of sunken vessels that are hazards to navigation in the one instance and promotion of safety on the high seas in the other. To allow shipowners to limit their liability in such cases could reduce their incentive to comply with important regulations.

We find inapposite the cases cited by Petitioners to support their argument that the term "forfeiture" used in the Limitation Act encompasses penalties that result from the Coast Guard proceedings. We do not read the Limitation Act to embody an intention to protect against fines and forfeitures in the form of civil regulatory penalties. The history of application of the Limitation Act reflects the limiting of liabilities arising out of damage to cargo or goods, injuries or damages resulting from collision, salvage claims, fires, personal injury suits by seamen,

and damages to structures or persons on land.[8]  The Limitation Act applies for the most part to limit tort ability, so penalties of the nature the Coast Guard seeks to recover in this case do not appear to be among the kinds of maritime misfortune that are subject to the Limitation Act.  We agree with the district court's analysis and holding on this issue.

B.    Limitation Act Protections under the Instant Facts

As an alternative basis for affirming the district court, we address, on an "as applied" basis, the interaction of the Limitation Act and the Coast Guard's statutory authority for the instant drug testing in the context of the particular facts of this case.  Even if we were to assume arguendo that the regulatory duties imposed on the Coast Guard by Congress in connection with drug testing somehow come within the ambit of the Limitation Act, we would still have to determine the statutory scope of the express language of the Limitation Act in this context.

The Limitation Act works only to limit the liability of a shipowner for "loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity or knowledge of such owner[.]"[9]  Thus, we must decide whether the regulatory proceedings

---

[8]  See Thomas J. Schoenbaum, Admiralty and Maritime Law § 15-8 at 317 (2d ed. 1994).

[9]  46 U.S.C. § 83(a).

7

complained of by Petitioners here are the result of their acts that were "done, occasioned, or incurred" as part of the Hall accident that provoked the underlying limitation litigation. Stated differently, if we assume for the sake of argument that Petitioners actually failed to perform the required drug and alcohol testing and reporting, we would then have to determine whether such failure was part and parcel of the Hall accident or was instead a separate incident, distinct from the accident and the voyage. Not surprisingly, Petitioners contend that the regulatory penalties are forfeitures "done, occasioned, or incurred" as a result of the accident and are thus subject to limitation; and, no less surprisingly, the Coast Guard insists they are not. As this presents a mixed question of fact and law, our review is <u>de</u> <u>novo</u>.

We again find no jurisprudence directly on point. The parties invite us to consider, for guidance, the "voyage test"[10] and our own precedent establishing the "distinct occurrence test."[11] Although we find neither test dispositive, we do note that the latter "requires a factual inquiry into whether the vessel owner had the 'time and opportunity' to take the necessary action to avoid subsequent liability that is distinct from the initial liability imposing event."[12] Although Petitioners argue that further

---

[10] See <u>Place v. Norwich & New York Transp. Co.</u>, 118 U.S. 468, 491 (1886).

[11] See <u>Exxon Shipping Co. v. Cailliteau</u>, 869 F.2d 843 (5th Cir. 1989).

[12] <u>Id.</u> at 847-48.

8

proceedings are needed to determine what, if anything, they could have done to prevent additional liability in the form of violations, we do not see it that way. The record before us is sufficient to establish definitively that, after Hall was injured, Petitioners had ample opportunity to comply with the Coast Guard requirements. We view the alleged failure to comply under this construction to be a distinct occurrence giving rise to an independent liability. Petitioners urge impossibility of compliance in light of the extremely traumatic nature of the Hall's injuries and the difficulty in obtaining blood samples given the massive transfusions that were necessitated; however, those parties will have ample opportunity to raise impossibility as a defense in the regulatory proceedings. This assertion simply has no bearing on the question of distinct occurrence.

Although both the facts and the timing make this a relatively close call, the more accurate characterization of the circumstances is that the administrative violations alleged to have occurred were distinct from, and subsequent to, the incident in which Hall was injured. They thus give rise to a liability, if any, that is not properly subject to the Limitation Act.

## II.

We affirm the judgment of the district court that the regulatory duties of the Coast Guard and the administrative proceedings to adjudicate charges arising from the enforcement of its drug and alcohol testing regulations are exempt from exoneration or limitation proceedings under the Limitation of

9

Liability Act.  In the alternative, we affirm the ruling of the district court to the extent it determined that, under the particular facts of this case, the regulatory enforcement action by the Coast Guard would not fall within the ambit of the Limitation of Liability Act even if it were applicable because that regulatory action relates to a distinct occurrence.[13]

AFFIRMED.

---

[13]  Appellants' motion for leave to file supplemental record excerpts, previously ordered carried with this case, is denied.